## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA

LAWRENCE WHALEY,

       Plaintiff,

v.

RENTGROW, INC.

       Defendants.

**Case No.: 2:23-cv-1393-DCN**

## **COMPLAINT**

Lawrence Whaley ("Plaintiff' or "Mr. Whaley") by and through his counsel brings the following Complaint against RentGrow, Inc. ("Defendant" or "RentGrow") for violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, arising out of a tenant screening report that Defendant published to Plaintiff's potential landlord, which falsely portrayed Plaintiff as a convicted felon.

## **INTRODUCTION**

1.     This is an individual action for damages, costs, and attorney's fees brought against Defendant pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA").

2.     Defendant is a consumer reporting agency ("CRA") that compiles and maintains files on consumers on a nationwide basis. It sells consumer reports, also known as tenant screening reports, generated from its database and furnishes these tenant

screening reports to mortgage brokers, landlords, and property management companies who use the reports to make decisions regarding prospective borrowers and tenants.

3.     Defendant assembled and published an inaccurate tenant screening report to Plaintiff's prospective landlord, which included an inaccurate felony unlawful carrying of a pistol conviction.

4.     In fact, Plaintiff has never been convicted of a felony in his life.

5.     Plaintiff's prospective landlord denied Plaintiff's housing application after receiving the tenant screening report from Defendant, in which Defendant published the inaccurate felony conviction.

6.     Defendant's inaccurate reporting could have easily been avoided had Defendant performed a cursory review of the widely available underlying public court records from Charleston County, South Carolina regarding the unlawful carrying offense prior to publishing the information to Plaintiff's prospective landlord.

7.     Had Defendant performed even a cursory review of the underlying public court records, it would have discovered that Plaintiff has never been convicted of felony unlawful carrying of a gun.

8.     Defendant does not employ reasonable procedures to assure the maximum possible accuracy of the information it reports regarding consumers. Defendant's failure to employ reasonable procedures resulted in Plaintiff's report being grossly inaccurate.

9.     Defendant committed these violations pursuant to its standard policies and practices, which harm innocent consumers seeking housing by prejudicing their prospective landlords with inaccurate information.

10.    Defendant's inaccurate report cost Plaintiff the ability to rent the apartment unit that was suitably accommodating of his needs, causing his physical injury as a result of emotional distress, embarrassment, inconvenience, anxiety about where his family would live, difficulty in his family relations, and fear of homelessness.

11.    As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of housing opportunities; loss of time and money trying to correct the tenant screening report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

12.    As a result of Defendant's conduct, action, and inaction, Plaintiff brings claims against Defendant for failing to follow reasonable procedures to assure maximum possible accuracy based on 15 U.S.C. § 1681e(b) of the FCRA.

## **PARTIES**

13.    Lawrence Whaley ("Plaintiff" or "Mr. Whaley") is a natural person residing in North Charleston, South Carolina, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

14.    Defendant RentGrow is a "consumer reporting agency," and a "reseller," as those terms are defined under 15 U.S.C. § 1681a(f), a(u). RentGrow assembles and merges information contained in the database of another consumer reporting agency and maintains a database of the assembled or merged information from which new consumer reports are

produced. RentGrow is registered to do business in the State of South Carolina, maintains its principal place of business at 307 Waverly Oaks Road, Suite 301, Waltham, MA 02452, regularly conducts business in this judicial district, and can be served with process by way of its registered agent, Corporation Service Company, located at 211 E. 7th Street, Suite 620, Austin, TX 78701.

15.    Among other things, Defendant sells consumer reports, often called tenant screening reports, to mortgage brokers, property management companies, and landlords for their use in deciding whether to rent or otherwise offer housing to a prospective tenant. These reports are provided in connection with a business transaction initiated by the consumer.

16.    Defendant is a consumer reporting agency as defined in 15 U.S.C. § 1681a(f) because for monetary fees, it regularly engages in the practice of evaluating and/or assembling information on consumers for the purpose of furnishing consumer reports for tenant screening purposes to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

## JURISDICTION AND VENUE

17.    This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

18.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## STATUTORY BACKGROUND

19.     Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing. Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

20.     While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports.  15 U.S.C. § 1681.

21.     Congress, concerned about inaccuracies in consumer reports, specifically required consumer reporting agencies to follow "reasonable procedures to assure maximum possible accuracy" in consumer reports. 15 U.S.C. § 1681e(b).

22.     Consumer reports that contain factually incorrect information which does not belong to the consumer at issue are neither maximally accurate nor fair to the consumers who are the subjects of such reports.

### THE FCRA'S PROTECTIONS FOR HOUSING APPLICANTS

23.     Despite its name, the Fair Credit Reporting Act covers more than just credit reporting, it also regulates tenant screening reports like the one Defendant prepared in Plaintiff's name.

24.     The FCRA provides a number of protections for housing applicants who are the subject of tenant screening reports for the purpose of securing housing and credit.

5

25. In the parlance of the FCRA, tenant screening reports are "consumer reports," and providers of tenant screening reports, like Defendant, are "consumer reporting agencies." 15 U.S.C. §§ 1681a(d) and (f).

26. The FCRA imposes duties on consumer reporting agencies to assure that consumer reports are accurate and that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

27. Under 15 U.S.C. § 1681e(b), consumer reporting agencies are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

28. Defendant disregarded its duties under the FCRA with respect to Plaintiff's tenant screening report.

## DEFENDANT'S ILLEGAL BUSINESS PRACTICES

29. Over the past 15 years, there has been increased collection and aggregation of consumer data, including criminal records and sex offender registration data. As a result of the increasing availability of this data, there has been a boom in the tenant screening industry.

30. Tenant Screening Reports are generally created by running automated searches through giant databases of aggregated criminal record data. The reports are created and disseminated with little to no manual, in-person review, and the underlying court records are rarely directly reviewed in creating tenant screening reports.

31.     Tenant Screening companies, like Defendant, collect millions of records from a number of sources with data from county, state, and federal level sources.  The data included in the reports is often not obtained directly from court records on an individual basis but instead is purchased in bulk or scraped from court websites.

32.     Given that Defendant is in the business of selling tenant screening reports, Defendant should be well aware of the FCRA and the attendant harm to consumers for reporting inaccurate or outdated information.

33.     Defendant places its business interests above the rights of consumers and reports such inaccurate information because it is cheaper for Defendant to produce reports containing information that is inaccurate and incomplete than it is for Defendant to exert proper quality control over the reports prior to their being provided to Defendant's customers.

34.     Defendant reports such erroneous and incomplete information because it wants to maximize the automation of its report creation process, thereby saving the costs associated with conducting the additional review necessary to remove the inaccurate or out-of-date entries.

35.     Defendant charges its customers the same price for reports that are grossly inaccurate as it does for accurate reports.

36.     Appropriate quality control review of Plaintiff's report would have made clear that Defendant was reporting a misdemeanor as a felony.

37.     As a provider of tenant screening reports, Defendant should be aware of the FCRA requirements and is a member of the Professional Background Screening

Association ("PBSA").  PBSA hosts a conference at least once a year where presenters discuss compliance with federal and state consumer reporting laws.

<u>FACTS</u>

**Plaintiff Applies for an Apartment with Centre Pointe Apartments**

38.    Plaintiff, his wife, and their two daughters (ages 6 and 10) had been living with Plaintiff's mother for about a year while trying to build a house.

39.    Living alongside them in Plaintiff's mother's house were also Plaintiff's sister and her partially disabled 24-year-old son. The house was very crowded with seven occupants (plus periodically Plaintiff's 22-year-old son). At times, that many occupants in a smaller home proved to be simply uncomfortable.

40.    Despite Plaintiff's best efforts, the home building project was not working out.  Coupled with the cramped living situation, Plaintiff and his family urgently needed to find an apartment.

41.    Plaintiff commenced an apartment search and took interest in the Centre Pointe Apartments ("Centre Point") in particular.

42.    Plaintiff and his wife really liked Centre Pointe; it was close to both of their respective workplaces, the apartment was on the first floor, and it was within their budget. Further, Plaintiff and his wife loved the amenities – they very much wanted to live there and did not want to live anywhere else.

43.    On or about July 25, 2022, Plaintiff and his wife applied to live at Centre Pointe; their original move-in date was to be July 29, 2022.

**Defendant Published an Inaccurate Tenant Screening Report to Centre Point Apartments**

44.     Centre Pointe Apartments contracted with Defendant to conduct tenant screening reports on prospective tenants to determine whether the prospective tenant is eligible to rent an apartment.

45.     On or about July 25, 2022, Centre Pointe ordered a tenant screening report on Plaintiff from Defendant.

46.     On July 25, 2022, Defendant sold a tenant screening report about Plaintiff to Centre Pointe, wherein Defendant published information including a compilation of Plaintiff's credit history, criminal history, and civil records history.

47.     The tenant screening report, identified as "Property Screening Report" by Defendant, is a consumer report regulated by the FCRA.

48.     Within that tenant screening report, Defendant published inaccurate information about Plaintiff.

49.     Specifically, Defendant's tenant screening report about Plaintiff included a grossly inaccurate and stigmatizing felony unlawful carrying conviction from Charleston County, South Carolina, which appeared in the tenant screening report as follows:

| PREMIUM NATIONAL CRIMINAL RECORDS SEARCH | | |
| --- | --- | --- |
| **REQUEST DATE** | **COMPLETED** | **STATUS** |
| 07/25/2022 3:59 PM | 07/25/2022 4:14 PM | Does Not Meet Property Requirements |
| | | No National Sex Offender Records Found |
| | | Criminal Records Found |

**WHALEY, LAWRENCE RAY**                                                                          **RECORD 1 OF 1**

**Last Name:** WHALEY                                         **Sex:** M
**First Name:** LAWRENCE                                  **Race:** B
**Middle Name:** RAY
**DOB:** ▮▮▮▮
**Record Type:** Criminal
**State Of Record:** SC
**Database:** SC CHARLESTON COUNTY CIRCUIT COURT

**UNLAWFUL CARRYING OF PISTOL**

**File Date:** 01/07/2003
**State Of Record:** SC                                                             **Case #:** GS102003002362WHALAW
**Court:** SC CHARLESTON COUNTY CIRCUIT COURT
**Offense:** UNLAWFUL CARRYING OF PISTOL
**Offense Degree:** FELONY
**Statute:** 16-23-50
**Disposition:** Commitment
**Disposition Date:** 04/15/2003
**Category:** CRIMINAL/TRAFFIC
**Court Name:** SC CHARLESTON COUNTY CIRCUIT COURT

**Court Type:** CRIMINAL/TRAFFIC
**Fips AreaShortName:** Charleston
**Fips Code:** 45019
**Fips Display:** SC-Charleston (45019)
**Fips StateCode:** SC
**Category:** CRIMINAL/TRAFFIC
**Counts:** 1
**Sentence:** 1 DAY/PAYM
**Sentence Amount:** 1 DAY/PAYM
**Sentence Category:** Commitment
**Sentence Date:** 04/15/2003
**Sentence Amount:** 100.00
**Sentence Category:** Fine
**Sentence Date:** 04/15/2003

50.    The felony unlawful carrying conviction reported by Defendant was the only criminal record Defendant reported.

51.    The felony unlawful carrying conviction reported by Defendant about Plaintiff is patently inaccurate.

52.    Plaintiff has never been convicted of a felony in his life.

53.    A cursory review of the widely available underlying public court records confirms that Plaintiff never pled guilty to nor was convicted of felony carrying of a gun. Rather, the public record confirms that Plaintiff was only ever convicted of *misdemeanor* carrying twenty years ago.

54.    The sole reason the inaccurate felony conviction was reported as belonging to Plaintiff was that Defendant failed to follow reasonable procedures to assure the maximum possible accuracy of the information it published within the tenant screening report it sold about Plaintiff to Plaintiff's prospective landlord.

55.    Had Defendant followed reasonable procedures, it would have discovered that Plaintiff has never been convicted of felony unlawful carrying and that it should not have reported the same.

56.    In preparing and selling a consumer report about Plaintiff, wherein Defendant published to Plaintiff's prospective landlord inaccurate information about Plaintiff, Defendant failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b).

**Centre Pointe Denies Plaintiff's Housing Application**

57.    On or about July 28, 2022, just one day before Plaintiff and his wife were scheduled to move in, Plaintiff received a "very rude" call from Centre Point stating that they would not rent to him because he was a convicted felon. Plaintiff tried to ask questions but the woman who called just kept talking over him saying they would never allow him to live there.

11

58.    Plaintiff was shocked and confused because he was not a felon.

59.    That same day, Plaintiff received an email that he was denied the apartment due to his criminal record.

60.    Plaintiff also received a letter from Centre Point (dated July 25, 2022) stating that Plaintiff's rental application was declined because his "criminal history [did] not meet the property requirements."

61.    The letter stated that Centre Point's decision was "based in whole or in part on information contained in a tenant screening report provided to us by RentGrow, Inc."

62.    The letter advised Plaintiff he could obtain a free copy of his tenant screening report by contacting RentGrow, which he did.

63.    Shortly thereafter, Plaintiff obtained a copy of the tenant screening report and was shocked and humiliated upon reviewing the felony unlawful carrying conviction contained within the tenant screening report.

64.    Plaintiff's wife was extremely upset about losing the apartment and the rude phone call from RentGrow. She was even more upset about the turmoil the denial was causing at Plaintiff's mother's home. Plaintiff and his wife had already told everyone living there that they were moving out on July 29, 2022, and his mother and sister wanted to know why they suddenly got rejected. Plaintiff was humiliated and embarrassed.

**Plaintiff Disputed the Misinformation in Defendant's Tenant Screening Report**

65.    On or about July 28, 2022, Plaintiff decided to go online to obtain his South Carolina Law Enforcement Division ("SLED") report, which provides citizens access to public criminal histories.

66.    The SLED report clearly lists only a single **misdemeanor** offense for Plaintiff, which occurred on January 6, 2003 – the unlawful carrying of a weapon.

```
WHALEY, LAWRENCE RAY              01/06/2003
SC0100000 CHARLESTON CNTY SO
CASE-03000671B
ATN-980000400958
CIT-16-23-20-MISDEMEANOR
                                     ARREST CHARGE -UNLAWFUL CARRY
                                       ING OF WEAPON
                                     OFFENSE DATE-01/06/2003
                                     PHOTOGRAPH AVAILABLE
```

67.    Plaintiff could not understand how Defendant could inaccurately report a 20-year-old *misdemeanor* as a felony.

68.    Plaintiff has lived in at least six different apartments since 2003, all requiring a tenant screening report, and he has never been accused of being a convicted felon; all previous screening reports came back as approved.

69.    On or about July 28, 2022, desperate to secure housing with Centre Point and riddled with worry over the far-reaching impacts of the inaccurate information, Plaintiff disputed the inaccurate information with Defendant.

70.    Plaintiff disputed online with Defendant by completing Defendant's online dispute form and specifically disputed the inaccurate reporting of a **felony** conviction that should have been reported as a misdemeanor.

71.    Plaintiff also included with his dispute to Defendant his SLED report showing the offense was a misdemeanor.

72.    The underlying public court record information was widely available to Defendant prior to publishing Plaintiff's tenant screening report to Centre Pointe Apartments, but Defendant failed to perform even a cursory review of such information.

73.     Plaintiff also called Centre Point multiple times.

74.     Plaintiff was very panicked, confused, and concerned about the impact of the inaccurate reporting that he was a convicted felon, both in relation to the Centre Pointe apartment, but also the impact of the same on his future.

75.     On or about August 4, 2022, Plaintiff received Defendant's updated tenant screening report confirming that it had reinvestigated Plaintiff's dispute, conceded its erroneous reporting, and corrected the reporting of the criminal record from a felony to a misdemeanor.

76.     Upon information and belief, Defendant also issued a corrected tenant screening report to Centre Pointe Apartments.

77.     Plaintiff contacted Centre Point and learned that they approved his application based on the *updated* tenant screening report from Defendant which accurately listed a misdemeanor instead of a felony conviction.

78.     Centre Point signed Plaintiff's and his wife's lease on or about August 5, 2022.

79.     Defendant's false report cost Plaintiff and his family a delay in moving into the new apartment that they were so excited about. They had turned down other apartments because they really wanted Centre Pointe.

80.     Plaintiff was humiliated, embarrassed, and frustrated after scheduling a U-Haul and beginning to move items out of storage and his mother's house only to have to tell his family living at his mother's house the day before he was to move out that he was denied the apartment.

81.     The Centre Point denial and uncertainty of where Plaintiff and his family were going to live increased the tension between Plaintiff and everyone else in the household. Plaintiff's wife was especially upset.

82.     Due to Defendant's unreasonable procedures in the first place and despite Plaintiff's continued efforts to seek housing, Plaintiff had to cancel his plans to move out, including his U-Haul, and he and his family were delayed getting out of his mother's house (and all the stress therein) for approximately one week, from July 29, 2022, to August 5, 2022.

83.     Plaintiff was extremely embarrassed and humiliated that a single incident two decades ago could be so falsely reported by Defendant so as to upend his life.

84.     The injuries suffered by Plaintiff as a direct result of Defendant's erroneous reporting are the type of injuries that the FCRA was enacted to address. Under common law, Defendant's conduct would have given rise to causes of action based on defamation and invasion of privacy.

85.     As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, delay of housing; loss of time and money trying to correct the tenant screening report; labor expended in trying to correct his report; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

**CLAIMS FOR RELIEF**
**COUNT I**
**15 U.S.C. § 1681e(b)**
**Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy**

86.     Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

87.     Defendant is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

88.     At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

89.     At all times pertinent hereto, the above-mentioned tenant screening report was a "consumer report" as that term is defined by 15 U.S.C. § 1681a(d).

90.     Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of the tenant screening report it sold about Plaintiff as well as the information it published within the same.

91.     As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of housing opportunities; loss of time and money trying to correct the tenant screening report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

16

92.    Defendant willfully violated 15 U.S.C. § 1681e(b) in that its conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

93.    Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

i.    Determining that Defendant negligently and/or willfully violated the FCRA;

ii.    Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

iii.    Awarding Plaintiff reasonable attorney's fees and costs as provided by the FCRA; and,

iv.    Granting further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.


RESPECTFULLY SUBMITTED this 6th day of April 2023.

*/s/ Dawn McCraw*
Dawn McCraw (SCB #105059)
Consumer Attorneys
8245 N 85th Way
Scottsdale, AZ 85258
T: (602) 807-1527
F: (718) 715- 1750
E: dmccraw@consumerattorneys.com
*Attorneys for Plaintiff*
*Lawrence Whaley*

18